IN THE FRANKLIN COUNTY COURT OF COMMON PLEAS, OHIO
CIVIL DIVISION

**10 CVH 02    2270**

**NICHOLAS GRANT LINDSAY**
3787 Preserve Crossing Blvd.
Columbus, Ohio 43230

       Plaintiff

Vs.

**TRANS UNION LLC**
C/O The Prentice-Hall Corporation
System, Inc., S/A
50 West Broad Street, Suite 1800
Columbus, Ohio 43215

**EQUIFAX INFORMATION SERVICES LLC**
C/O CSC-Lawyers Incorporating Service
(Corporation Service Company), S/A
50 West Broad Street, Suite 1800
Columbus, Ohio 43215

**EXPERIAN INFORMATION SOLUTIONS, INC.**
C/O C T Corp, S/A
1300 E 9th St
Cleveland, Ohio 44114

**CAPITAL ONE FINANCIAL CORPORATION, aka**
Capital One, aka Capital One Bank, aka Capital One,
National Association, aka Cap One
C/O Corporation Service Company, S/A
11 S 12th St
PO Box 1463
Richmond, VA 23218

**CREDIT ONE FINANCIAL, dba Credit One Bank,**
fka First National Bank of Marin, also fka
Marin National Bancorp
C/O National Registered Agents, Inc. of NV, S/A

Case No. _____

Judge _____

**COMPLAINT AND JURY DEMAND**
Rule 7.04 Category: H – Other Civil



204 Carson City
Carson City, NV 89701

APPLIED BANK
C/O Cross Country Bank, S/A
800 Delaware Avenue
Wilmington, DE 19801

PORTFOLIO RECOVERY ASSOCIATES, LLC,
aka Portfolio Recvry & Affil
C/O National Registered Agents, Inc., S/A
145 Baker Street
Marion, Ohio 43302

CITIGROUP INC., dba Citi, also dba Citibank
C/O C T Corporation System, S/A
17 S. High Street 11th Floor
Columbus, Ohio 43215

IEI FINANCIAL SERVICES, LLC
C/O CSC-Lawyers Incorporating Service
(Corporation Service Company), S/A

     Defendants

---

## COMPLAINT WITH JURY DEMAND ENDORSED HEREON

    Now comes Plaintiff, Nicholas Grant Lindsay ("Lindsay"), by and through his

counsel, and for his Complaint, states and avers as follows:

### PARTIES & FACTS

1.    At all times relevant herein, Plaintiff, Lindsay, is and has been an individual, and

a resident of Franklin County, Ohio.

2.    At all times relevant herein, Defendant, Trans Union LLC ("Trans Union"), is a

foreign corporation, authorized to conduct, and so conducting, business in the State of

Ohio, and who will be served through its authorized agent for service of process.

3. At all times relevant herein, Defendant, Equifax Information Services LLC ("Equifax"), is a foreign corporation, authorized to conduct, and so conducting, business in the State of Ohio, and who will be served through its authorized agent for service of process.

4. At all times relevant herein, Defendant, Experian Information Solutions, Inc. ("Experian"), is a foreign corporation, authorized to conduct, and so conducting, business in the State of Ohio, and who will be served through its authorized agent for service of process.

5. At all times relevant herein, Defendant, Capital One Financial Corporation, aka Capital One, aka Capital One Bank, aka Capital One, National Association, aka Cap One ("Capital One") is a foreign corporation, authorized to conduct, and so conducting, business in the State of Ohio, and who will be served through its authorized agent for service of process. Notably, Capital One does not have a statutory agent registered with the Ohio Secretary of State, therefore service of process is being made vis-à-vis Capital One's registered agent in Delaware.

6. At all times relevant herein, Defendant, Credit One Financial, aka Credit One Bank, fka First National Bank of Marin, also fka Marin National Bancorp ("Credit One"), is a foreign corporation, authorized to conduct, and so conducting, business in the State of Ohio, and who will be served through its authorized agent for service of process. Notably, Credit One does not have a statutory agent registered with the Ohio Secretary of State, therefore service of process is being made vis-à-vis Credit One's registered agent in Delaware.

7. At all times relevant herein, Defendant, Applied Bank, is a foreign corporation, authorized to conduct, and so conducting, business in the State of Ohio, and who will be

served through its authorized agent for service of process. Notably, Applied Bank does not have a statutory agent registered with the Ohio Secretary of State, therefore service of process is being made vis-à-vis Applied Bank's registered agent in Delaware.

8.     At all times relevant herein, Defendant, Portfolio Recovery Associates, LLC, aka Portfolio Recvry & Affil ("Portfolio"), is a foreign corporation, authorized to conduct, and so conducting, business in the State of Ohio, and who will be served through its authorized agent for service of process.

9.     At all times relevant herein, Defendant, Citigroup, Inc., dba Citi, also dba Citibank. ("Citi"), is a foreign corporation, authorized to conduct, and so conducting, business in the State of Ohio, and who will be served through its authorized agent for service of process.

10.    At all times relevant herein, Defendant, IEI Financial Services, LLC ("IEI"), is a foreign corporation, authorized to conduct, and so conducting, business in the State of Ohio, and who will be served through its authorized agent for service of process.

11.    On or about February 15, 2008, Lindsay was denied gainful employment based on inaccurate information in his credit report.

12.    Between April 2008 and the present time, Lindsay was denied multiple extensions of credit based on inaccurate information in his credit report, including, *inter alia*, a home loan.

13.    Between April 2008 and the present time, Lindsay has been subjected to debt collection attempts, and legal proceedings being initiated against him, based upon the inaccurate information in his consumer credit report.

14.    As a result of the employment and credit denials, as set forth above, Lindsay became aware of the derogatory data on his consumer credit report.

15.     With respect to all disputes referenced in this Complaint, *supra* and *infra,* as applicable to each and every defendant herein, as part of his letters of dispute therewith, Lindsay informed each and every defendant herein that he is and was the victim of identity theft, and further indicated that his mother, Robin Lindsay, and Scott Kolp, are believed to be the identity thieves.

16.     With respect to all disputes referenced in this Complaint, *supra* and *infra,* as applicable to each and every defendant herein, Lindsay was compliant, prompt and responsive to all requests for information and documentation.

17.     At all times relevant, Lindsay has taken additional steps to mitigate his damages by disputing the inaccurate information with both the credit reporting agencies as well as the furnishers. Other steps include, but are not limited to, causing security and fraud alerts to be placed upon his consumer credit reports published by Trans Union, Equifax and Experian.

18.     Between February 15, 2008 and March 13, 2008, the Bank of America and/or MBNA and/or MBNA/Bank of America and/or Portfolio entry appeared on Lindsay's Trans Union consumer credit report under derogatory status.

19.     Between February 15, 2008 and March 13, 2008, Lindsay disputed the alleged debt with Bank of America and/or MBNA and/or MBNA/Bank of America and/or Portfolio with Trans Union, and asserted that the alleged debt did not, and does not, belong to him.

20.     The Bank of America and/or MBNA and/or MBNA/Bank of America and/or Portfolio account entries issued by Portfolio appearing on Lindsay's consumer credit report arose from debt and/or credit that did not, and does not, belong to Lindsay. Said

account entries were improperly attributed to Lindsay by Trans Union, and as a result of willful or negligent actions and/or omissions of Portfolio.

21. On or about October 2008, the Capital One entry appeared on Lindsay's Equifax consumer credit report under derogatory status.

22. On or about October 2008, Lindsay disputed the alleged debt with Capital One with Equifax, and asserted that the alleged debt did not, and does not, belong to him.

23. The Capital One account entries issued by Capital One appearing on Lindsay's consumer credit report arose from debt and/or credit that did not, and does not, belong to Lindsay. Said account entries were improperly attributed to Lindsay by Equifax, and as a result of willful or negligent actions and/or omissions of Capital One.

24. On or about October 2008, the Bank of America and/or MBNA and/or MBNA/Bank of America and/or Portfolio entry appeared on Lindsay's Equifax consumer credit report under derogatory status.

25. On or about October 2008, Lindsay disputed the alleged debt with Bank of America and/or MBNA and/or MBNA/Bank of America and/or Portfolio with Equifax, and asserted that the alleged debt did not, and does not, belong to him.

26. The Bank of America and/or MBNA and/or MBNA/Bank of America and/or Portfolio account entries issued by Portfolio appearing on Lindsay's consumer credit report arose from debt and/or credit that did not, and does not, belong to Lindsay. Said account entries were improperly attributed to Lindsay by Equifax, and as a result of willful or negligent actions and/or omissions of Portfolio.

27. On or about October 2008, the Applied Bank entry appeared on Lindsay's Trans Union consumer credit report under derogatory status.

28.   On or about October 2008, Lindsay disputed the alleged debt with Applied Bank with Trans Union, and asserted that the alleged debt did not, and does not, belong to him.

29.   The Applied Bank account entries issued by Applied Bank appearing on Lindsay's consumer credit report arose from debt and/or credit that did not, and does not, belong to Lindsay. Said account entries were improperly attributed to Lindsay by Trans Union, and as a result of willful or negligent actions and/or omissions of Portfolio.

30.   On or about October 2008, the Credit One entry appeared on Lindsay's Trans Union consumer credit report under derogatory status.

31.   On or about October 2008, Lindsay disputed the alleged debt with Credit One with Trans Union, and asserted that the alleged debt did not, and does not, belong to him.

32.   The Credit One account entries issued by Credit One appearing on Lindsay's consumer credit report arose from debt and/or credit that did not, and does not, belong to Lindsay. Said account entries were improperly attributed to Lindsay by Trans Union, and as a result of willful or negligent actions and/or omissions of Credit One.

33.   On or about October 2008, the Bank of America and/or MBNA and/or MBNA/Bank of America and/or Portfolio entry appeared on Lindsay's Trans Union consumer credit report under derogatory status.

34.   On or about October 2008, Lindsay disputed the alleged debt with Bank of America and/or MBNA and/or MBNA/Bank of America and/or Portfolio with Trans Union, and asserted that the alleged debt did not, and does not, belong to him.

35.   The Bank of America and/or MBNA and/or MBNA/Bank of America and/or Portfolio account entries issued by Portfolio appearing on Lindsay's consumer credit

report arose from debt and/or credit that did not, and does not, belong to Lindsay. Said account entries were improperly attributed to Lindsay by Trans Union, and as a result of willful or negligent actions and/or omissions of Portfolio.

36.    On or about October 2008, the Capital One entry appeared on Lindsay's Trans Union consumer credit report under derogatory status.

37.    On or about October 2008, Lindsay disputed the alleged debt with Capital One with Trans Union, and asserted that the alleged debt did not, and does not, belong to him.

38.    The Capital One account entries issued by Capital One appearing on Lindsay's consumer credit report arose from debt and/or credit that did not, and does not, belong to Lindsay. Said account entries were improperly attributed to Lindsay by Trans Union, and as a result of willful or negligent actions and/or omissions of Capital One.

39.    On or about October 2008, the Citi entry appeared on Lindsay's Trans Union consumer credit report under derogatory status.

40.    On or about October 2008, Lindsay disputed the alleged debt with Citi with Trans Union, and asserted that the alleged debt did not, and does not, belong to him.

41.    The Citi account entries issued by Citi appearing on Lindsay's consumer credit report arose from debt and/or credit that did not, and does not, belong to Lindsay. Said account entries were improperly attributed to Lindsay by Trans Union, and as a result of willful or negligent actions and/or omissions of Citi.

42.    On or about March 3, 2009, the Bank of America and/or MBNA and/or MBNA/Bank of America and/or Portfolio entry appeared on Lindsay's Equifax consumer credit report under derogatory status.

43.    On or about March 3, 2009, Lindsay disputed the alleged debt with Bank of America and/or MBNA and/or MBNA/Bank of America and/or Portfolio with Equifax, and asserted that the alleged debt did not, and does not, belong to him.

44.    The Bank of America and/or MBNA and/or MBNA/Bank of America and/or Portfolio account entries issued by Portfolio appearing on Lindsay's consumer credit report arose from debt and/or credit that did not, and does not, belong to Lindsay. Said account entries were improperly attributed to Lindsay by Equifax, and as a result of willful or negligent actions and/or omissions of Portfolio.

45.    On or about March 3, 2009, the Applied Bank entry appeared on Lindsay's Experian consumer credit report under derogatory status.

46.    On or about March 3, 2009, Lindsay disputed the alleged debt with Applied Bank with Experian, and asserted that the alleged debt did not, and does not, belong to him.

47.    The Applied Bank account entries issued by Applied Bank appearing on Lindsay's consumer credit report arose from debt and/or credit that did not, and does not, belong to Lindsay. Said account entries were improperly attributed to Lindsay by Experian, and as a result of willful or negligent actions and/or omissions of Applied Bank.

48.    On or about March 3, 2009, the Capital One entry appeared on Lindsay's Experian consumer credit report under derogatory status.

49.    On or about March 3, 2009, Lindsay disputed the alleged debt with Capital One with Experian, and asserted that the alleged debt did not, and does not, belong to him.

50.    The Capital One account entries issued by Capital One appearing on Lindsay's consumer credit report arose from debt and/or credit that did not, and does not, belong to Lindsay. Said account entries were improperly attributed to Lindsay by Experian, and as a result of willful or negligent actions and/or omissions of Capital One.

51.    On or about March 3, 2009, the Bank of America and/or MBNA and/or MBNA/Bank of America and/or Portfolio entry appeared on Lindsay's Experian consumer credit report under derogatory status.

52.    On or about March 3, 2009, Lindsay disputed the alleged debt with Bank of America and/or MBNA and/or MBNA/Bank of America and/or Portfolio with Experian, and asserted that the alleged debt did not, and does not, belong to him.

53.    The Bank of America and/or MBNA and/or MBNA/Bank of America and/or Portfolio account entries issued by Portfolio appearing on Lindsay's consumer credit report arose from debt and/or credit that did not, and does not, belong to Lindsay. Said account entries were improperly attributed to Lindsay by Experian, and as a result of willful or negligent actions and/or omissions of Portfolio.

54.    On or about March 3, 2009, the IEI and/or DP&L entry appeared on Lindsay's Experian consumer credit report under derogatory status.

55.    On or about March 3, 2009, Lindsay disputed the alleged debt IEI and/or DP&L with Experian, and asserted that the alleged debt did not, and does not, belong to him.

56.    The IEI and/or DP&L account entries issued by IEI appearing on Lindsay's consumer credit report arose from debt and/or credit that did not, and does not, belong to Lindsay. Said account entries were improperly attributed to Lindsay by Experian, and as a result of willful or negligent actions and/or omissions of IEI.

57.    On or about March 3, 2009, the Credit One entry appeared on Lindsay's Experian consumer credit report under derogatory status.

58.    On or about March 3, 2009, Lindsay disputed the alleged debt with Credit One with Experian, and asserted that the alleged debt did not, and does not, belong to him.

59. The Credit One account entries issued by Credit One appearing on Lindsay's consumer credit report arose from debt and/or credit that did not, and does not, belong to Lindsay. Said account entries were improperly attributed to Lindsay by Experian, and as a result of willful or negligent actions and/or omissions of Credit One.

60. On or about March 3, 2009, the Citi entry appeared on Lindsay's Experian consumer credit report under derogatory status.

61. On or about March 3, 2009, Lindsay disputed the alleged debt with Citi with Experian, and asserted that the alleged debt did not, and does not, belong to him.

62. The Citi account entries issued by Citi appearing on Lindsay's consumer credit report arose from debt and/or credit that did not, and does not, belong to Lindsay. Said account entries were improperly attributed to Lindsay by Experian, and as a result of willful or negligent actions and/or omissions of Citi.

63. On or about March 3, 2009, the Capital One entry appeared on Lindsay's Trans Union consumer credit report under derogatory status.

64. On or about March 3, 2009, Lindsay disputed the alleged debt with Capital One with Trans Union, and asserted that the alleged debt did not, and does not, belong to him.

65. The Capital One account entries issued by Capital One appearing on Lindsay's consumer credit report arose from debt and/or credit that did not, and does not, belong to Lindsay. Said account entries were improperly attributed to Lindsay by Trans Union, and as a result of willful or negligent actions and/or omissions of Capital One.

66. On or about March 3, 2009, the Credit One entry appeared on Lindsay's Trans Union consumer credit report under derogatory status.

67.    On or about March 3, 2009, Lindsay disputed the alleged debt with Credit One with Trans Union, and asserted that the alleged debt did not, and does not, belong to him.

68.    The Credit One account entries issued by Credit One appearing on Lindsay's consumer credit report arose from debt and/or credit that did not, and does not, belong to Lindsay. Said account entries were improperly attributed to Lindsay by Trans Union, and as a result of willful or negligent actions and/or omissions of Credit One.

69.    On or about March 3, 2009, the Applied Bank entry appeared on Lindsay's Trans Union consumer credit report under derogatory status.

70.    On or about March 3, 2009, Lindsay disputed the alleged debt with Applied Bank with Trans Union, and asserted that the alleged debt did not, and does not, belong to him.

71.    The Applied Bank account entries issued by Applied Bank appearing on Lindsay's consumer credit report arose from debt and/or credit that did not, and does not, belong to Lindsay. Said account entries were improperly attributed to Lindsay by Trans Union, and as a result of willful or negligent actions and/or omissions of Applied Bank.

72.    On or about March 3, 2009, the Citi entry appeared on Lindsay's Trans Union consumer credit report under derogatory status.

73.    On or about March 3, 2009, Lindsay disputed the alleged debt with Citi with Trans Union, and asserted that the alleged debt did not, and does not, belong to him.

74.    The Citi account entries issued by Citi appearing on Lindsay's consumer credit report arose from debt and/or credit that did not, and does not, belong to Lindsay. Said account entries were improperly attributed to Lindsay by Trans Union, and as a result of willful or negligent actions and/or omissions of Citi.

75.   On or about March 3, 2009, the Bank of America and/or MBNA and/or MBNA/Bank and/or Portfolio of America entry appeared on Lindsay's Trans Union consumer credit report under derogatory status.

76.   On or about March 3, 2009, Lindsay disputed the alleged debt with Bank of America and/or MBNA and/or MBNA/Bank of America and/or Portfolio with Trans Union, and asserted that the alleged debt did not, and does not, belong to him.

77.   The Bank of America and/or MBNA and/or MBNA/Bank of America and/or Portfolio account entries issued by Portfolio appearing on Lindsay's consumer credit report arose from debt and/or credit that did not, and does not, belong to Lindsay. Said account entries were improperly attributed to Lindsay by Trans Union, and as a result of willful or negligent actions and/or omissions of Portfolio.

78.   On or about October 20, 2009, a Warren County Court judgment entry appeared on Lindsay's Trans Union consumer credit report under derogatory status.

79.   On or about October 20, 2009, Lindsay disputed the Warren County Court judgment with Trans Union, and asserted that the judgment entry was the result of his identity theft, did not, and does not, belong to him.

80.   The Warren County Court judgment entry appearing on Lindsay's consumer credit report arose from debt and/or credit that did not, and does not, belong to Lindsay. Said account entries were improperly attributed to Lindsay by Trans Union.

81.   On or about October 20, 2009, the Capital One entry appeared on Lindsay's Trans Union consumer credit report under derogatory status.

82.   On or about October 20, 2009, Lindsay disputed the alleged debt with Capital One with Trans Union, and asserted that the alleged debt did not, and does not, belong to him.

83.   The Capital One account entries issued by Capital One appearing on Lindsay's consumer credit report arose from debt and/or credit that did not, and does not, belong to Lindsay. Said account entries were improperly attributed to Lindsay by Trans Union, and as a result of willful or negligent actions and/or omissions of Capital One.

84.   On or about October 20, 2009, the Credit One entry appeared on Lindsay's Trans Union consumer credit report under derogatory status.

85.   On or about October 20, 2009, Lindsay disputed the alleged debt with Credit One with Trans Union, and asserted that the alleged debt did not, and does not, belong to him.

86.   The Credit One account entries issued by Credit One appearing on Lindsay's consumer credit report arose from debt and/or credit that did not, and does not, belong to Lindsay. Said account entries were improperly attributed to Lindsay by Trans Union, and as a result of willful or negligent actions and/or omissions of Credit One.

87.   On or about October 20, 2009, the Applied Bank entry appeared on Lindsay's Trans Union consumer credit report under derogatory status.

88.   On or about October 20, 2009, Lindsay disputed the alleged debt with Applied Bank with Trans Union, and asserted that the alleged debt did not, and does not, belong to him.

89.   The Applied Bank account entries issued by Applied Bank appearing on Lindsay's consumer credit report arose from debt and/or credit that did not, and does not, belong to Lindsay. Said account entries were improperly attributed to Lindsay by Trans Union, and as a result of willful or negligent actions and/or omissions of Applied Bank.

90.   On or about February 2008 through the present time, Lindsay spent hours making telephone calls and writing letters to Trans Union, Equifax and Experian. In

said correspondence and communications, Lindsay has requested a copy of his consumer credit report from Trans Union, Equifax and Experian, and has denied that the account entries described in paragraphs 18 through 92, *supra*, were attributable to him, to demand reinvestigation, and to demand that Trans Union, Equifax and Experian delete the erroneous and derogatory data on his consumer credit report. During that period of time, Lindsay had multiple contacts with Trans Union, Equifax and Experian in order to continually dispute the false data on his consumer credit report.

91.     The false information was also attributed to Lindsay's consumer credit report by a consumer reporting agency, Acxiom, and was notably expeditiously removed on or about February 2010 following a single letter of dispute from Lindsay.

92.     The inaccurate account entries described in paragraphs 18 through 92, *supra*, were also systematically and sporadically modified and eventually deleted by Trans Union, Equifax and Experian at different times and following different letters of dispute by Lindsay.

93.     Between February 2008 and to the date that this lawsuit is being filed, Lindsay spent hours making telephone calls and writing letters to Citi, Portfolio, Applied Bank, Credit One, Capital One and IEI, to demand that they each respectively correct any false reporting which appeared on Lindsay's consumer credit reports, and to deny that the account and/or debt belonged to him.

94.     On or about March 13, 2008, Trans Union sent correspondence to Lindsay indicating investigation results pertaining to the false and derogatory data regarding the Bank of America and/or MBNA and/or MBNA/Bank of America and/or Portfolio account entry. These results indicated that the derogatory information would remain on Lindsay's consumer credit report until March 2012.

95. On or about November 14, 2008, Equifax sent correspondence to Lindsay indicating investigation results pertaining to the false and derogatory data regarding the Bank of America and/or MBNA and/or MBNA/Bank of America and/or Portfolio account entry. These results indicated that the derogatory information was verified and would remain on Lindsay's consumer credit report.

96. On or about November 14, 2008, Equifax sent correspondence to Lindsay indicating investigation results pertaining to the false and derogatory data regarding the Capital One account entry. These results indicated that the derogatory information was verified and would remain on Lindsay's consumer credit report.

97. On or about April 1, 2009, Equifax sent correspondence to Lindsay indicating investigation results pertaining to the false and derogatory data regarding the Bank of America and/or MBNA and/or MBNA/Bank of America and/or Portfolio account entry. These results indicated that the derogatory information was verified *again* and would remain on Lindsay's consumer credit report.

98. On or about April 2, 2009, Experian sent correspondence to Lindsay indicating investigation results pertaining to the false and derogatory data regarding the Bank of America and/or MBNA and/or MBNA/Bank of America and/or Portfolio account entry. These results indicated that the derogatory information was verified and would remain on Lindsay's consumer credit report.

99. On or about April 2, 2009, Experian sent correspondence to Lindsay indicating investigation results pertaining to the false and derogatory data regarding the Applied Bank account entry. These results indicated that the derogatory information was verified and would remain on Lindsay's consumer credit report.

100. On or about April 2, 2009, Experian sent correspondence to Lindsay indicating investigation results pertaining to the false and derogatory data regarding the Capital One account entry. These results indicated that the derogatory information was verified and would remain on Lindsay's consumer credit report.

101. On or about April 2, 2009, Experian sent correspondence to Lindsay indicating investigation results pertaining to the false and derogatory data regarding the IEI and/or DP&L account entry. These results indicated that the derogatory information was verified and would remain on Lindsay's consumer credit report.

102. On or about April 2, 2009, Experian sent correspondence to Lindsay indicating investigation results pertaining to the false and derogatory data regarding the Credit One account entry. These results indicated that the derogatory information was verified and would remain on Lindsay's consumer credit report.

103. On or about April 2, 2009, Experian sent correspondence to Lindsay indicating investigation results pertaining to the false and derogatory data regarding the Citi account entry. These results indicated that the derogatory information was verified and would remain on Lindsay's consumer credit report.

104. On or about April 6, 2009, Trans Union sent correspondence to Lindsay indicating investigation results pertaining to the false and derogatory data regarding the Bank of America and/or MBNA and/or MBNA/Bank of America and/or Portfolio account entry. These results indicated that the derogatory information had been verified *again* and would remain on Lindsay's consumer credit report for three more months that previously indicated by Trans Union, and until June 2012.

105. On or about April 6, 2009, Trans Union sent correspondence to Lindsay indicating investigation results pertaining to the false and derogatory data regarding the

Capital One account entry. These results indicated that the derogatory information would remain on Lindsay's consumer credit report until August 2011.

106. On or about April 6, 2009, Trans Union sent correspondence to Lindsay indicating investigation results pertaining to the false and derogatory data regarding the Citi account entry. These results indicated that the derogatory information would remain on Lindsay's consumer credit report until November 2010.

107. On or about April 6, 2009, Trans Union sent correspondence to Lindsay indicating investigation results pertaining to the false and derogatory data regarding the Applied Bank account entry. These results indicated that the derogatory information would remain on Lindsay's consumer credit report until January 2012.

108. On or about April 6, 2009, Trans Union sent correspondence to Lindsay indicating investigation results pertaining to the false and derogatory data regarding the Credit One account entry. These results indicated that the derogatory information would remain on Lindsay's consumer credit report until August 2011.

109. On or about November 10, 2009, Trans Union sent correspondence to Lindsay indicating investigation results pertaining to the false and derogatory data regarding the Credit One account entry. These results indicated that the derogatory information was *again* verified and would remain on Lindsay's consumer credit report until August 2011.

110. On or about November 10, 2009, Trans Union sent correspondence to Lindsay indicating investigation results pertaining to the false and derogatory data regarding the Applied Bank account entry. These results indicated that the derogatory information would remain on Lindsay's consumer credit report until January 2012.

111. On or about November 10, 2009, Trans Union sent correspondence to Lindsay indicating investigation results pertaining to the false and derogatory data regarding the

civil judgment entry entry. These results indicated that the derogatory information would remain on Lindsay's consumer credit report until March 2013.

112. On or about December 3, 2008, Applied Bank sent correspondence to Lindsay indicating investigation results pertaining to the false and derogatory data regarding the Applied Bank account entry had been reviewed and was "reporting correctly with the credit bureaus."

113. On or about January 5, 2009, Bank of America sent correspondence to Lindsay indicating after a "thorough investigation" the results pertaining to the false and derogatory data regarding the Bank of America account entry contending that the subject account was attributable to Lindsay.

114. On or about April 2, 2009, Portfolio sent correspondence to Lindsay in response to Lindsay's dispute, stating that said dispute is "substantially the same as [previous] dispute" and that said dispute is "frivolous and irrelevant."

115. On or about April 28, 2009, IEI sent correspondence to Lindsay indicating investigation results pertaining to the false and derogatory data regarding the IEI account entry contending that the subject account was verified.

116. As a result of the false derogatory information on Lindsay's consumer credit report, he has received multiple credit denials and has been denied employment opportunity. This has caused Lindsay to suffer financial loss, lost credit opportunities, and serious embarrassment, humiliation and emotional distress.

## FIRST CAUSE OF ACTION: FAIR CREDIT REPORTING ACT

117. Lindsay hereby incorporates the proceeding paragraphs as if fully restated herein.

118. This claim is for violation of the Fair Credit Reporting Act by Defendants, Trans Union, Equifax and Experian along with other common law claims.

119. Trans Union, Equifax and Experian are each a "consumer reporting agency" as defined in the Fair Credit Reporting Act.

120. Trans Union, Equifax and Experian each issued, assembled, transferred, and published "consumer reports," regarding Lindsay, as defined in the Fair Credit Reporting Act.

121. Trans Union, Equifax and Experian have each continually added, stored, maintained, and disseminated personal and credit data about Lindsay which is false, erroneous, and misleading, without employing procedures to insure the maximum possible accuracy of the information posed to Lindsay's consumer reports and disseminated the same to third-parties.

122. Trans Union, Equifax and Experian through each Defendant's actions and inactions, as described herein, caused great and irreparable injury to Lindsay.

123. Trans Union, Equifax and Experian have each continually mis-merged, or otherwise misreported, credit data attributable to other persons with the consumer credit report of Lindsay.

124. Trans Union, Equifax and Experian have each failed to utilize a search algorithm that is capable of distinguishing between persons with different personal identifiers.

125. Trans Union, Equifax and Experian have each continually posted false and harmful information to Lindsay's consumer credit reports without requiring a reasonable number of points of correspondence.

126. Trans Union, Equifax and Experian have each failed to invoke necessary functions, procedures, or programs designed to insure that false data and/or data

attributable to other persons would not post on Lindsay's consumer credit report, and would be suppressed from appearing on Lindsay's consumer credit report.

127. Trans Union, Equifax and Experian have each created, maintained, and utilized a credit reporting system that is defective, and does not comply with the Fair Credit Reporting Act, or other laws governing Trans Union, Equifax and Experian's respective actions.

128. Trans Union, Equifax and Experian have each improperly posted accounts and other data to Lindsay's credit files.

129. Trans Union, Equifax and Experian have each acted with actual malice and/or with willful intent to injure Lindsay.

130. Trans Union, Equifax and Experian have each defamed Lindsay by publishing false information regarding Lindsay's creditworthiness to third parties.

131. Trans Union, Equifax and Experian have each invaded Lindsay's reasonable expectation of privacy.

132. Trans Union, Equifax and Experian have each failed in their respective duty to prevent foreseeable injury to Lindsay.

133. Trans Union, Equifax and Experian have each, through its actions and inactions, as described herein, caused great and irreparable harm to Lindsay, *inter alia*, as described herein.

## SECOND CAUSE OF ACTION: CONSUMER SALES PRACTICES ACT

134. Lindsay hereby incorporates the proceeding paragraphs as if fully restated herein.

135. This claim is for violation of the Consumer Sales Practices Act by Defendants, Trans Union, Equifax and Experian.

Page **21** of **26**

136.  At all times relevant, Lindsay was a consumer, as defined by the Ohio Consumer Sales Practices Act.

137.  At all times relevant, Trans Union, Equifax and Experian were each a supplier, as defined by the Ohio Consumer Sales Practices Act.

138.  At all times relevant, the facts as set forth herein, effect a consumer transaction, as defined by the Ohio Consumer Sales Practices Act.

139.  At all times relevant, each defendant's actions and/or omissions, as forth herein, affected Lindsay's access to favorable credit terms, and that was unfair and/or deceptive to Lindsay.

140.  At all times relevant, each defendant's violations of the Fair Credit Reporting Act, as set forth herein, was unfair and/or deceptive to Lindsay.

141.  At all times relevant, each defendant's violations of common law claims, as set forth in Claim One above, and *infra*, was unfair and/or deceptive to Lindsay.

142.  Trans Union, Equifax and Experian each knew, or should have known, that its actions and/or omissions, as set forth herein, were unfair and/or deceptive to Lindsay, but Trans Union, Equifax and Experian did so anyway, and that was unfair and/or deceptive to Lindsay.

143.  As a result of the above, among other things, before, during, or after one or more consumer transactions involving or effecting Lindsay, Trans Union, Equifax and Experian each committed one or more unfair and/or deceptive acts.

## THIRD CAUSE OF ACTION: FAIR CREDIT REPORTING ACT

144.  Lindsay hereby incorporates the proceeding paragraphs as if fully restated herein.

145. This claim is for violation of the Fair Credit Reporting Act by Defendants, Citi, Portfolio, Applied Bank, Credit One, Capital One and IEI, along with other common law claims.

146. Citi, Portfolio, Applied Bank, Credit One, Capital One and IEI have each willfully and/or negligently violated the provisions of the Fair Credit Reporting Act by willfully and/or negligently failing to comport with the Fair Credit Reporting Act § 1681s-2(b).

147. Citi, Portfolio, Applied Bank, Credit One, Capital One and IEI have each defamed Lindsay by publishing false information regarding Lindsay's creditworthiness to third parties.

148. Citi, Portfolio, Applied Bank, Credit One, Capital One and IEI have each invaded Lindsay's reasonable expectation of privacy.

149. Citi, Portfolio, Applied Bank, Credit One, Capital One and IEI have each failed in its duty to prevent foreseeable injury to Lindsay.

150. Citi, Portfolio, Applied Bank, Credit One, Capital One and IEI have each, through its actions and inactions, as described herein, cause great and irreparable injury to Lindsay.

## FOURTH CAUSE OF ACTION: CONSUMER SALES PRACTICES ACT

151. Lindsay hereby incorporates the proceeding paragraphs as if fully restated herein.

152. This claim if for violation of the Ohio Consumer Sales Practices Act by Defendants, Citi, Portfolio, Applied Bank, Credit One, Capital One and IEI.

153. At all times relevant, Lindsay was a consumer, as defined by the Ohio Consumer Sales Practices Act.

154. At all times relevant, the facts as set forth herein, effected a consumer transaction, as defined by the Ohio Consumer Sales Practices Act.

155. At all times relevant, Citi, Portfolio, Applied Bank, Credit One, Capital One and IEI have each displayed actions and/or omissions, as set forth herein, which have affected Lindsay's access to favorable credit terms, and that was unfair and/or deceptive to Lindsay.

156. At all times relevant, Citi, Portfolio, Applied Bank, Credit One, Capital One and IEI's respective violations of the Fair Credit Reporting Act, and other common law claims, as set forth herein, were unfair and/or deceptive to Lindsay.

157. Citi, Portfolio, Applied Bank, Credit One, Capital One and IEI each knew, or should have known that its actions and/or omissions, as set forth herein, were unfair and/or deceptive to Lindsay, but Citi, Portfolio, Applied Bank, Credit One, Capital One and IEI did so anyway, and that was unfair and/or deceptive to Lindsay.

158. As a result of the above, among other things, Citi, Portfolio, Applied Bank, Credit One, Capital One and IEI have each committed one or more unfair and/or deceptive acts before, during , or after, one or more consumer transactions involving or effecting Lindsay.

**WHEREFORE**, Plaintiff, Lindsay, demands judgment against Defendants, jointly and severally, as applicable in accordance with the allegations set forth above, as deemed just and lawful by the Court; plus, on each claim, litigation costs, interest, reasonable attorney fees, and any and all other legal and equitable relief this Honorable Court deems just and lawful and as follows:

## PRAYER FOR RELIEF

1. On the first claim for violation of the Fair Credit Reporting Act by and Trans Union, Equifax and Experian, jointly and severally, compensatory damages in an amount greater than $25,000.00 to compensate Lindsay for his personal damages, statutory damages, punitive damages, in an amount greater than $25,000.00, litigation costs, interest, attorney fees as deemed proper and lawful by the Court, and any and all other legal and equitable relief this Court deems just and lawful for each violation that may be proven at trial; and

2. On the second claim, for violation of the Consumer Sales Practices Act by Trans Union, Equifax and Experian, jointly and severally, $200.00 statutory damages, or three times actual damages, whichever is greater, and other damages, remedies, and relief, including non-economic damages, litigation expenses, interest, and attorney fees as deemed proper and lawful by the Court, for each and every violation that may be proven at trial; and

3. On the third claim, for violation of the Fair Credit Reporting Act Citi, Portfolio, Applied Bank, Credit One, Capital One and IEI, compensatory damages in an amount greater than $25,000.00 to compensate Lindsay for his personal damages, statutory damages, punitive damages, in an amount greater than $25,000.00, litigation costs, interest, attorney fees as deemed proper and lawful by the Court, and any and all other legal and equitable relief this Court deems just and lawful for each violation that may be proven at trial; and

4. On the fourth claim, for violation of the Consumer Sales Practices Act by Citi, Portfolio, Applied Bank, Credit One, Capital One and IEI, $200.00 statutory

damages, or three times actual damages, whichever is greater, and other damages, remedies, and relief, including non-economic damages, litigation expenses, interest, and attorney fees as deemed proper and lawful by the Court, for each and every violation that may be proven at trial.

Plus, on each and every claim, expenses of suit and litigation, interest from the date the contract was consummated, reasonable attorney fees; plus all costs, and any and all other legal and equitable relief deemed necessary and just.

## JURY DEMAND

Pursuant to Rule 38(b) of the Rules of Civil Procedure, a trial by jury composed of the maximum number of jurors permitted by law is hereby demanded by the Plaintiff Nicholas Grant Lindsay.

Respectfully submitted,

Amy L. Wells          (0078247)
BEHNKE, MARTIN & SCHULTE, LLC
Talbott Tower, Suite 840
131 N. Ludlow St.
Dayton, Ohio 45402
Tel: (937) 435-7500
Fax: (937) 435-7511
AWells@LegalDayton.com
www.OhioConsumerHelp.com
Trial Counsel for Plaintiff